IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

BEATRICE JACKSON,

                Plaintiff,            Case No. 3:08 CV 1911

    -vs-

                                               <u>MEMORANDUM   OPINION</u>

OHIO DEPARTMENT OF
REHABILITATION AND CORRCTION,

                Defendant.

KATZ, J.

This matter is before the Court on cross-motions for summary judgment and attendant responses thereto.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  For the reasons that follow, Defendant's motion is granted and Plaintiff's motion is denied.

## BACKGROUND

Beatrice Jackson ("Jackson") is an African-American female who has been employed for 31 years by the Ohio Department of Rehabilitation and Corrections ("ODRC").  The ODRC is an instrumentality of the State of Ohio that operates correctional facilities throughout the state.  Ms. Jackson was assigned to work at the Toledo Correctional Facility ("TCF") as a Corrections Sergeant.

In July 2007, Jackson began a disability leave to undergo surgery to her knee.  Following the surgery, Jackson was released by her physician to return to work with non weight bearing restrictions in July, August, and September of 2007.  At the time Plaintiff requested permission to return to work with this adjustment, ODRC participated in a Return to Work Partnership Program ("RTWPP").

On July 13, 2007, Jackson asked Harvey Wilford ("Wilford"), personal director at TCF, about returning to work on light duty. Wilford advised Jackson that light duty was not available. Jackson was also not deemed eligible for the RTWPP due to her use of crutches. At the same time, Jackson applied for disability benefits and made subsequent applications at the end of August and in early December 2007.

In mid-September 2007, Jackson's doctor extended her restrictions to March 13, 2008. On October 22, 2007, another extension was submitted by Jackson's doctor scaling back her restrictions until March 1, 2008.

On October 25, 2007, Jackson was advised, in writing, regarding a hearing in mid-November regarding disability separation. The hearing proceeded on November 13, 2007, at which time, Jackson was placed on voluntary disability separation. Jackson took an administrative appeal of this finding, however, the appeal was dismissed by the State Personnel Board of Review.

On December 3, 2007, Jackson filed a complaint with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission and in May 2008, she received a right-to-sue letter. The instant litigation was filed on August 8, 2008. The sole cause of action remaining[1] alleges a violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

On March 29, 2010, both sides filed cross-motions for summary judgment. Plaintiff filed for partial summary judgment on her claim under the Rehabilitation Act and Defendant filed for summary judgment on all claims. As the Plaintiff has voluntarily dismissed all claims save that

---

[1] In Plaintiff's opposition to Defendant's motion for summary judgment, "Plaintiff voluntarily dismisses her claims for age discrimination under the ADEA, gender and race discrimination." (Doc. No. 52 at p. 20.)

under the Rehabilitation Act, Defendant's motion for summary judgment on the remaining claims is moot.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at

2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## DISCUSSION

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

Plaintiff seeks summary judgment on her claim based upon the Rehabilitation Act on the basis that: (1) she has established a prima facie disability discrimination; (2) in her separation from employment on November 13, 2007, Defendant treated her as substantially limited in the major life activity(s) of walking, standing, and/or working; (3) as a matter of law, Defendant failed to engage in an interactive process to determine a reasonable accommodation; and (4) the Defendant denied Plaintiff a reasonable accommodation.

The Defendants seek summary judgment on the claim brought under the Rehabilitation Act asserting that: (1) Plaintiff was not "regarded as" disabled; and (2) the ODRC's reason for denying Plaintiff admission to the RTWPP program was not pretextual.

*A. Prima Facie Case*

Under the Rehabilitation Act, to establish a *prima facie* case of discrimination, a plaintiff must demonstrate that : (1) she is disabled; (2) is otherwise qualified for the position, with or without reasonable accommodation; and (3) she was subject to discrimination solely by reason of her disability. *Doe v. Salvation Army,* 531 F.3d 355, 358 (6th Cir. 2008).

To be considered "disabled" under the Rehabilitation Act, a person "must (1) have a physical or mental impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) have a record of such an impairment, or (3) be regarded as having such an impairment.'" *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 204), quoting *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).

1. Regarded as Disabled

In the present case, a critical point of dispute is whether the Plaintiff was regarded as disabled by the Defendant. The Defendant claims it never considered Plaintiff to be permanently

5

disabled and did not perceive her to have a physical impairment that would cause her to be substantially limited in the performance of any major life activity.

To meet the "regarded as disabled" threshold, the Court is guided by the test enunciated by the Supreme Court in *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999), which requires: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."[2] The purpose behind this standard is to "allow individuals to be judged according to their actual capacities, rather than through a scrim of 'myths, fears, and stereotypes accruing around a perceived impairment." *Mahon*, 295 F.3d at 592.

The first determination under this analysis is whether a plaintiff can establish there is an impairment. In this instance, there is little dispute that Plaintiff was unable to walk without pain due to arthroscopic knee surgery performed in July 2007. However, as noted by the Supreme Court in *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 195 (2002), "[m]erely having an impairment does not make one disabled for purposes of the ADA." The analysis requires determining whether the impairment limits a major life activity. *Id.*

Major life activities are defined under both the EEOC and Department of Health and Human Services regulations as "caring for oneself, performing manual tasks, walking, seeing,

---

[2] The ADA Amendments Act of 2008, effectively overruled *Sutton*, in part. 42 U.S.C. § 12102(1) (2009). As the present action arose before those amendments were effective, the Court applies the law in effect at the time of the events in question as the Sixth Circuit has deemed they do not apply retroactively. *See Milholland v. Sumner County Bd. Of Educ.*, 569 F.3d 562, 565-566 (6th Cir. 2009).

hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); 45 C.F.R. § 84.3(j)(2)(ii). In determining whether the perceived impairment substantially limits a major life activity, a court considers whether a plaintiff:

(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such a limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l); 45 C.F.R. § 84.3(j)(2)(iv).

Plaintiff contends that Defendant's employees perceived her to be "substantially limited in her ability to ambulate/walk and/or stand and thus precluded her from returning to work even though [Defendant] had in place a legally mandated transitional return-to-work." (Pltf's Motion at p. 19.)   In support of her argument, Plaintiff cites (1) the failure of Defendants to place her in the RTWPP and its subsequent treatment of her "as though she was totally incapacitated and should be disability separated,"; (2) the Defendant's decision to engage the involuntary disability separation process constitutes an admission Plaintiff was perceived to be substantially limited in her ability to walk and/or stand and/or work for the foreseeable future; and (3) that the length of time Defendant relied upon to determine she could not return to work without restriction coupled with the lack of contradictory medical documentation all weigh in favor of a perception of the "regarded as" disabled status.   The Court finds the Plaintiff cannot establish her claim of substantial limitation even under the "regarded as" factors as to both walking or working.

7

a. Return to Work Partnership Program

The RTWPP's policy states its purpose is to "implement an individualized and progressive and transitional work program for employees in need of modified task(s)/assignments(s) during their recovery from temporary restriction(s). . . *without compromising the safety and security of any employee of the Department of Rehabilitation and Correction, its inmate population or the community at large*." (Doc. No. 46-6 at §II .) (Emphasis added.) The eligibility requirements for participation in this program require, *inter alia*:

> Any employee released to return to work with written restrictions by a treating healthcare provider shall be considered for admission into RTWPP. The restrictions must be temporary and prevent the employee from performing the essential functions of his/her job or restrict his/her performance of specified task(s)/assignment(s) that are part of the RTWPP participant's regularly assigned duties. The RTWPP participant shall be given *90 days or less*, per workers' compensation injury, disability claim, or other incident *to gradually transition back to full time unrestricted duty*.

*Id.* at § VI (E)(2). (Emphasis added.)

The process for consideration began when documentation by the physician (regarding the employee) was received in Wilford's office. Wilford Dep. at p. 47. At that point the committee members, including labor and management representative, would be consulted to determine if the employee qualified for the program. *Id*. at pp. 47-49. Wilford's deposition testimony also corroborated the policy in place which precluded the use of crutches or canes based upon safety concerns. Wilford Dep., at pp. 61-63. The RTWPP policy itself addresses this issue in its guidelines:

> No employee shall be excluded form RTWPP because of the use of crutches, braces, or other devices to assist with recovery unless the RTWPP Worksite Team and/or Appointing Authority/Designee determines that such device places the RTWPP participant at an undue safety risk or compromises security.

(Doc. No. 46-6 at § VI ( D)( 7).

8

Wilford noted that TFC is a level 3 prison which houses approximately 1,000 inmates and which includes violent offenders. During his deposition, he related an instance wherein he agreed to allow an employee into the RTWPP who was on crutches. He noted he should not have allowed it and added that he was overruled by the committee on that decision which was supported by the warden. Wilford Dep. at pp. 61-62. He elaborated on aspects of prison safety:

> [W]e don't want to provide a potential weapon for any of these inmates. We just had an inmate cut up four of our officers this past spring in Toledo. We had an inmate, in February, break an officer's jaw [sic] a radio, a small, small radio.
> We just had a correction lieutenant have six stitches right here on his forehead right between his eyes, approximately two weeks ago. That's the type of an assault by an inmate. Those are the types of clientele we deal with. The idea was we don't want crutches in the building anywhere, for that reason.

*Id.* at pp 62-63. Additionally, Wilford noted that there was no work site within the institution which was devoid of inmate contact. *Id.* at pp. 63 and 65. In fact, Wilford himself was subject to that policy following his knee surgery in the fall of 2005 as he was unable to return to work until he was rid of the crutches and could put weight on his leg. *Id*. at p. 67.

Plaintiff's documentation, signed by Dr. Kalb, listed her work restrictions from 7/13/2007 through 8/20/2007, as "non weight bearing." (Doc. No. 27-13.) The medical documentation by Dr. Kalb for the following month, dated August 16, 2007, continued this work restriction and extended it to September 13, 2007. (Doc. No. 27-15.) On September 13, 2007, Dr. Kalb continued the work restrictions but extended them until March 13, 2008. (Doc. No. 27-18.) Then, on October 22, 2007, Dr. Kalb revised the length of the non weight bearing restriction from March 13th to March 1st, 2008. (Doc. No. 27-20.)

9

In an answer to Plaintiff's Interrogatory No. 11 regarding Plaintiff's eligibility requirements for participation in the RTWPP on November 13, 2007, Wilford answered as follows:

> On October 22, 2007, Ms. Jackson submitted to DRC, a note from Dr. Robert L. Kalb which authorized her to return to work with "non weight bearing" restrictions for a period of time spanning more than four months. As an initial matter, it is not clear that Ms. Jackson could perform any duties consistent with her Sergeant's job description if she were unable to bear any weight. However, the key problem with Dr. Kalb's restriction as [sic] its duration, because pursuant to DRC Policy 36-LEV-05(D)(C), all tasks/assignments offered to a participant under RTWPP shall terminate within 90 days or less.

(Doc. No. 41-1, p. 1.)

At his subsequent deposition, Wilford testified as to non weight bearing issues regarding the RTWPP:

> A: If its nonweight bearing, I don't recall that we did let someone come in on nonweight bearing, if the doctor indicated nonweight bearing.
>
> Q: Okay. Is there any reason why they couldn't work in the front desk or the front office?
>
> A: If you're referring to Ms. Jackson's scenario--
>
> Q: Well, anyone.
>
> A: We have not on nonweight bearing
>
> Q: But there is no reason they can't right?
>
> A: We have not because on nonweight bearing, there is usually an orthopedic device that goes along with that restriction.
>
> Q: We already talked about the wheelchair, they could come in in a wheelchair?
>
> A: We have not allowed it. It hasn't been requested.
>
> Q: Okay. But anyway, as far as nonweight bearing, what you described would be the concern, right?

10

> A: Yes, because there would be an orthopedic device attached to that. And later on, if they provided more medical documentation, say, on a supplemental application, if it's still indicated nonweight bearing, we would look at that and say, well, the initial one said nonweight bearing. Here we are a month later, there is no improvement.
> And part of the return-to-work policy is that if there is no improvement, we would cancel the agreement anyway. There has to be an improvement.
>
> Q: Okay.

Wilford Dep. at pp. 86-87. Both Wilford's answer to Interrogatory No. 11 and his deposition testimony corroborate Defendant's position that Plaintiff was not eligible for participation in the RTWPP. Initially, Plaintiff was ineligible due to the non weight bearing restrictions. By September 13, 2007, it was clear that Dr. Kalb extended these restriction well beyond the ninety day time period contemplated in the RTWPP policy, therefore rendering Plaintiff ineligible on a second and independent basis. Plaintiff testified that she asked Wilford for light duty but was told that option was not available. Each of Dr. Kalb's notes submitted to Defendant stated, "[i]f no light duty available, patient is to be off work." Given the RTWPP policies, Plaintiff's documentary evidence and Wilford's deposition, there is no evidence Defendant perceived Plaintiff as disabled under the ADA as it pertained to its actions under the RTWPP.

      b. Disability Separation Process.

The ODRC's Disability Review and Separation characterizes its purpose as "establish[ing] a standardized disability review and separation policy for all employees within the Ohio Department of Rehabilitation and Correction (ODRC) which complies with Chapter 123:1-30 of the Ohio Administrative Code (OAC)."[3] (Doc. No. 46-5 at §II.) The policy states:

---

[3] This section of the Ohio Administrative Code deals with Disability Separation. *See* BALDWIN'S OHIO ADMIN. CODE 123:1-30 (2008).

11

>   These reviews are undertaken to establish whether the employee is now able, or expected within the foreseeable future to be able to perform the essential functions of his/her position. Employees determined to be unable to perform the essential functions of their positions, and for whom there exists no expectation that they will be able to perform those essential functions within the foreseeable future, shall be provided the opportunity for disability retirement, or shall be disability separated.

*Id.* at § V. In consideration of factors, the policy further states:

>   All cases shall be aggressively reviewed where actual incapacitation is not well documented or is suspect, or where an anticipated date of return to work has not been established, *or where an employee is off work for longer than six months*.

*Id.* at § V(B).

Plaintiff was approved for short term disability benefits in July, August and September 2007. (Doc. Nos. 27-14; 27-17; and 27-19.) In his deposition, Wilford explained his reasons for recommending Plaintiff for disability separation:

>   A:   There have been no - - primarily, her last day worked was June 29, 2007, and we had this piece of medical documentation that you just gave me, what is it, Exhibit 3, indicating that should [sic] would be off until 3-1-2008, which was exceeding the six-month-off work period by approximately three month.
>             . . .
>             The second reason was listed right on this medical document, Exhibit 3, "Continue same restrictions of nonweight bearing," and taking her off until 3-1[-2008]. There had been no improvement in her condition since the surgery of July 2, 2007.
>
>   Q:   Okay.
>
>   A:   That is why I recommended to the warden at that time that we initiate a disability separation hearing, and she would either come back with a full medical release or we would initiate the separation, provide her with the opportunity to continue applying for disability, so she could keep having a paycheck. Also apply for disability retirement for a longer term period, if OPERS decided she was eligible. Unfortunately, she didn't follow through on completing the paperwork on either one.

Wilford Dep. at pp. 91-92.

> Q: Now the fact that she would not be returning within 90 days one of things you factored in?  In other words, based on what the doctor said in his written summary?
>
> A: On Exhibit 3?
>
> Q: Yes.
>
> A: No.  It was the fact that she would be off until 3-1-2008, according to this document.
>
> Q: That's more than 90 days?
>
> A: No, that's beyond six months on the disability separation policy.  So that's why we took action at that time.  And she had been told ahead of time in September when she came in to pick up her paycheck - - I told her, I said, "Right now, medical doc is indicating you're going to be off beyond six months."  I said, "We are going to wait until the doctor provides medical documentation again," and I said, "If he takes you off beyond six months," and this was standing in the front entry of the main prison, when I told her this, I said, "then the State will probably initiate disability separation."
> At that point in time, she told me we were discriminating against her, and we waited until this document came in, approximately, I think five or six weeks later because that was on 9-13, I think I told her that when she dropped off an extension request for disability.  I told her, "We'll wait until the next piece, then we'll make a determination."
> Well, this Exhibit 3 was the next piece of medical doc that came in.  It clearly took her well beyond six months, and there was no medical improvement.  Dr. Kalb, himself, wrote that, "continuous nonweight bearing."  There had been no improvement, and that was what generated this.

*Id.* at pp. 94-95.  Subsequently, on October 25, 2007, Plaintiff was sent notification that a disability separation hearing was scheduled for November 13, 2007.  The letter states in pertinent part:

> This [hearing] will give you an opportunity to provide any medical or relevant documentation pertaining to the extent of your disability/injury and potential of resuming the essential job functions of your pre-disability position as a **Correction Sergeant/Counselor**.  This hearing IS NOT a disciplinary proceeding.  The focus on updating your medical recovery status and evaluating your fitness for duty.

13

(Doc. No. 27-22, p. 2.)

There is no dispute Plaintiff presented no medical or relevant documentation at the hearing to support her position opposing disability separation. Although Wilford does not recall Plaintiff telling the panel that she was waiting on approval for steroid injections which would allow her to return by the end of 2007, he testified "it would not have impacted the decision to disability separate. Everything was based upon medical documentation." Wilford Dep. at p. 96.

An involuntary disability separation has been deemed not to be inherently disciplinary or punitive. *Cordial v. Ohio Dept. Of Rehab. & Corr.*, 2006 WL 1390843, (Ohio App. 2006) (citations omitted). Here, Plaintiff is unable to establish Defendant deviated from the policy or procedure utilized for involuntary disability separations. To the contrary, Wilford testified that his aim was to keep the employee "in a paid status." *Id.* at p. 40. The process allows for payment under this status and allows for reinstatement, subject to certain requirements. As noted on the Order of Involuntary Disability Separation:

> IN ACCORDANCE WITH THE OHIO ADMINISTRATIVE CODE 123:1-33-02; YOU ARE BEING PLACE ON DISABILITY SEPARATION EFFECTIVE NOVEMBER 13, 2007. YOU HAVE BEEN ABSENT FROM WORK SINCE JUNE 29, 2007. ACCORDING TO THE LATEST MEDICAL EVALUATION YOU CANNOT RETURN TO YOUR POSITION OF CORRECTION COUNSELOR/SERGEANT AT THIS TIME. IN ACCORDANCE WITH THE OHIO ADMINISTRATIVE CODE 123:1-33-04, APPLICATION FOR REINSTATEMENT MUST BE MADE NO LATER THAN JUNE 29, 2009.
>
> THIS DISABILITY SEPARATION IS NOT A DISCIPLINARY MEASURE.

(Doc. No. 27-23, p. 1.)

Additionally, "[t]hat an employer believes an employee may qualify for disability benefits under a standard that is narrower than the Rehabilitation Act's definition of 'disability' is not evidence that the employee is 'regarded as disabled' under the Act." *Dabney v. Ohio Dept. Of*

*Admin. Svcs.*, 2006 WL 745176 *11 (S.D. Ohio 2006), *citing Hoskins v. Oakland Co. Sheriff's Dept.* 44 F.Supp. 882, 891 (E.D. Mich. 1999), *aff'd* 227 F.3d 719 (6th Cir. 2000).

Plaintiff testified that as a corrections sergeant, her duties included "job assignments, bed assignments, discipline. We are the first line of discipline as far as the inmates go. We're also responsible for the day-to-day cleaning and assignments of inmates." Jackson Dep. at p. 13. She also stated that involuntary disability separation was a wrong decision because she was not given her full six months of disability. *Id.* at p. 147. When asked if she could have done all of her sergeant duties as of the date of the disability hearing, Plaintiff answered:

> A: All of the duties of my job? Not all of them, but I would try.
>
> . . .
>
> Q: Okay. Even though you had a doctor's restriction that said nonweight bearing?
>
> A: If it had saved my job, yes, I would have tried.

*Id.* at p. 147-148.

Considering all of the relevant evidence in Plaintiff's favor, there is no genuine issue of material fact to support her claim she was regarded as disabled by the Defendant. There is no evidence to support the claim that Defendant was mistaken about Plaintiff's physical condition. Nor is there evidence showing the Defendant perceived Plaintiff to be substantially limited in any major life activity. As Plaintiff is unable to establish the critical first element of a *prima facie* case for disability discrimination, Defendant is entitled to summary judgment on this issue as a matter of law.

*B. Legitimate Reasons and Pretext*

Where the defendant establishes that the actions were taken for a legitimate, nondiscriminatory reason, it becomes the plaintiff's burden to prove by a preponderance of the evidence that the reason was actually a pretext for discrimination. See *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 146-47 (2000) ("the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff.. . . [I]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination"). Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S.248, 256 (1981) citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804-805.

Under the law of the Sixth Circuit, "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Wright v. Murray Guard*, 455 F.3d 702, 708 (6th Cir. 2006) (internal quotation marks omitted). An employer's investigation process "need not have been perfect, but its decision must have been 'reasonably informed and considered.'" *Graham v. Best Buy Stores*, 298 Fed.Appx. 487, 494 (6th Cir. 2008) (quoting *Wright*, 455 F. 3d at 708). Even where the employer makes such a showing, however, the inquiry is not over, for "once the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce proof to the contrary." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.. 1998) (internal quotation marks omitted).

Here, the evidence demonstrates Wilford determined Plaintiff ineligible for the RTWPP initially because of the non weight bearing restriction.  By October 2007, the non weight bearing restriction had not changed and Dr. Kalb extended Plaintiff's restrictions beyond the ninety day limit of participation in the RTWPP.   When Plaintiff  presented her medical note from Dr. Kalb, she was told by Wilford that nothing had changed and that was consistent with Dr. Kalb's continued restriction of "non weight bearing."  Thus, the Defendant is deemed to have articulated a legitimate nondisriminatory reason for its actions.

Plaintiff testified that on September 13, 2007, when she presented her doctor's note, she was no longer using crutches.  However, the medical documentation presented to Defendant did not reflect Plaintiff's ability to return to work without the non weight bearing restrictions.   The medical documentation upon which the Defendant based its determination for consideration of the RTWPP simply did not change.

Similarly, Defendant's decision to proceed with the involuntary disability separation was founded on Dr. Kalb's assessment that Plaintiff required light duty with restrictions in excess of the six month time frame contemplated by the Defendant's Disability Review and Separation.  Moreover, Plaintiff was fully advised in advance of the hearing of her ability to present documentation to the contrary at the hearing.  She did not present any documentation to support her position at the hearing.

Finally, although Plaintiff characterizes her involuntary disability separation as a employment termination, that position is without merit. *See Cordial, supra* at \*4 (finding an involuntary disability separation not to be a discharge for purposes of discriminatory practices

17

prohibited under Ohio statute due to the right of reinstatement). As Plaintiff has failed to establish evidence of pretext, Defendant is entitled to summary judgment.

## CONCLUSION

This Court finds Plaintiff provides no evidence that Defendant perceived her to be substantially limited in a major life activity, thus, she has failed to establish a necessary element of a *prima facie* case under the Rehabilitation Act. While the Defendant has articulated a legitimate nondiscriminatory reason for its actions, Plaintiff has failed to rebut this position with evidence of pretext.

On this basis, the Court finds for the Defendant as a matter of law on the claims pursuant to § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Accordingly, Defendant's motion for summary judgment (Doc. No. 44) is granted and Plaintiff's motion for partial summary judgment (Doc. No. 43) is denied on the § 504 claims. As Plaintiff has voluntary dismissed the remainder of her claims in her opposition to Defendant's motion for summary judgment, no further claims remain before the Court and this case is closed.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE